UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


FRANCISCO GONZALEZ,                  :
        Plaintiff                    :
                                     :
    v.                               :   CIVIL NO.3:CV-04-668
                                     :
                                     :   (Judge Conaboy)
JOHN NASH, ET AL.,                   :
        Defendants                   :
_____

## MEMORANDUM AND ORDER
### Background

     This pro se civil rights action was initiated by Francisco

Gonzalez, an inmate presently confined at the Schuylkill Federal

Correctional Institution, Minersville, Pennsylvania ("FCI-

Schuylkill").  Service of the original complaint was previously

ordered.

     On August 26, 2004, Plaintiff filed a proposed amended

complaint which named two individuals as Additional Defendants.

See Doc. 22.  By Order dated November 30, 2004, the amended

complaint was deemed a supplemental complaint.

     Named as Defendants are FCI-Schuylkill and the following

prison employees: Warden John Nash; Associate Warden Deneen

Sweet; Recreation Supervisor Fred Thompson; Teacher Keith

Maurer; Health Services Administrators Charleston Iwuagwu and

Edgardo Ong; Physician Assistants ("PA") David Steffan and

Kenton Hubble; Correctional Counselors Kranzel and Smith; and

1

Doctor Russell C. Hendershot.

Plaintiff states that on the afternoon of April 7, 2001, while jogging on the prison track, he "tripped in a small ditch/pit in the track."  Doc. 1, Attachment #1, p. 1.  As a result of this fall, Gonzalez purportedly injured his left knee and twisted his ankle.  Upon being apprised of Plaintiff's injury, Officer Maurer contacted the prison's Medical Department and was told to "send me over."  Id.  After arriving at the Medical Department, Plaintiff was examined by PA Hubble who allegedly concluded that he had suffered a minor sprain.  Before being sent back to his housing unit, Gonzalez was given an ice pack and the use of a wheelchair.

By the next day, Plaintiff's condition had purportedly worsened so he returned to the medical department and filled out a request form asking to be seen by a doctor.  Throughout the following month, Gonzalez contends that the injury to his left knee continued to deteriorate requiring him to make various return visits to the medical department.  During those visits. Plaintiff was given pain medication.  Finally, on May 2, 2001, Gonzalez had an appointment with Doctor Ross, who recommended the taking of an x-ray.

Plaintiff contends that due to the Defendants' negligent diagnosis and inadequate treatment, he developed an infection which required him to undergo surgery.  After a prolonged delay, Gonzalez underwent surgery on September 12, 2002.  During this

2

procedure, 25% of Plaintiff's leg muscle had to be removed due to the infection.  His original complaint additionally contends that Plaintiff was not provided with needed rehabilitation following the operation. Gonzalez's final assertion is that Defendant Kranzel, who is described as being racially biased, retaliated against him by interfering with his attempts to obtain relief via the prison administrative remedy procedure. He concludes that due to Defendants' negligence he has suffered painful, permanent injury to his leg.  His original complaint seeks compensatory damages.

In his supplemental complaint (Doc. 22), Plaintiff names Health Care Administrator Ong and Medical Director Doctor Hendershot as Additional Defendants.  Plaintiff states that on April 23, 2003, Doctor Michael Borofsky, a rheumatologist, diagnosed him as having monoarthritis, prescribed physical therapy and recommended that he undergo MRI testing.  Gonzalez indicates that Defendants failed to comply with Doctor Borofsky's recommended course of treatment.  He further indicates that he has not been provided with adequate medical care because he speaks only Spanish.

Presently pending is the Defendants' motion requesting entry of summary judgment.  See Doc. 35.  The motion has been briefed and is ripe for disposition.

### Discussion

Defendants argue that they are entitled to entry of summary

3

judgement in their favor on the grounds that: (1) the claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment; (2) FCI-Schuylkill is not a properly named Defendant; (3) Gonzalez failed to exhaust his available administrative remedies with respect to his claims regarding an unsafe track at FCI-Schuylkill and being denied grievance forms by Defendant Kranzel; (4) all claims predating March 22, 2002 are time barred;(5) there are no assertions of personal involvement in constitutional misconduct raised against Defendants Nash, Sweet, Maurer, Iwuagwu, Hubble, Steffan, Smith Ong, or Hendershot and (6) Defendants are entitled to qualified immunity.

**Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an

4

essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, supra, 106 S.Ct. at 2553 and 2554.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  Id. In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

**Eleventh Amendment**

The initial argument raised by Defendants is that the portion of Gonzalez's action which seeks monetary relief against

them in their official capacities must be dismissed under the

Eleventh Amendment.  The Eleventh Amendment provides:

> The judicial power of the United States
> shall not be construed to extend to any suit
> in law or equity, commenced or prosecuted
> against one of the United States by citizens
> of another state, or by citizens or subjects
> of any foreign state.

"[C]laims for money damages against the prison officials in

their official capacity are claims for retroactive relief and

hence are barred by the Eleventh Amendment." Doe v. Wagginton,

21 F.3d 733 (6th Cir. 1994) (citing Edelman v. Jordan, 415 U.S.

651, 663 (1974).  The Court of Appeals for the Third Circuit in

Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981),

similarly concluded that an "action in federal court for damages

or back pay against a state official acting in his official

capacity is barred because such retrospective relief necessarily

depletes the state treasury."  Pursuant to the above discussion,

Plaintiff's claims to the extent that they seek monetary

compensation from the Defendants in their official capacities

are clearly barred by the Eleventh Amendment and will be

dismissed.

**FCI-Schuylkill**

The United States and other governmental entities are not

persons and therefore not proper defendants in a federal civil

rights action.  Accardi v. United States, 435 F. 2d 1239, 1241

(3d Cir. 1970); see also Hindes v. F.D.I.C., 137 F.3d 148, 159

(3d Cir. 1998).

Similarly, a prison or correctional facility is not a person for purposes of a civil rights claim.  See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995). Pursuant to the above standards, FCI-Schuylkill is clearly not a person and may not be sued under Bivens.  See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000). Consequently, summary judgment will be entered in favor of FCI-Schuylkill.

**Statue of Limitations**

Defendants next argue that any claim predating March 22, 2002 is barred by Pennsylvania's applicable statute of limitations.  In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985); Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).

The United States Supreme Court clarified its decision in Wilson when it held that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions."  Owens v. Okure, 488 U.S. 235, 250

7

(1989).  Pennsylvania's applicable personal injury statute of limitations is two years.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 190 (3d Cir. 1993); <u>Smith v. City of Pittsburgh</u>, 764 F.2d 188, 194 (3d Cir.), <u>cert. denied</u>, 474 U.S. 950 (1985).  Finally, the statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action."  <u>Gentry v. Resolution Trust Corp.</u>, 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

Defendants correctly note that Gonzalez signed his original complaint on March 22, 2004.  In <u>Houston v Lack</u>, 487 U.S. 266 (1988), the United States Supreme Court established that a prisoner's complaint is deemed filed at the time it was given to prison officials for mailing to the Court. This "mailbox rule" resulted from the Court's concern that prisoners had no choice but to rely upon prison authorities for the filing of their legal papers.  The Court in <u>Houston</u> also noted that if a question regarding timeliness of a filing date arises, a prisoner would not likely be able to establish that prison staff were responsible for any delays in the filing of such papers. <u>See</u> <u>id</u>. at 271.  Pursuant to the standards announced in <u>Houston</u>, Gonzalez's complaint will be deemed filed as of March 22, 2004.

The question of when a cause of action accrues is a question of federal law.  <u>Smith v. Wambaugh</u>, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  A § 1983 claim accrues when the facts

which support the claim reasonably should have become known to the plaintiff.

Gonzalez's allegations of a long term deliberate indifference to his medical needs indicate a continuous or ongoing violation of his rights.  If a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing pattern falls within the limitations period.  Brenner v. Local 514, 927 F. 2d 1283, 1295 (3d Cir.  1991).

Plaintiff's complaint states that he was injured on April 7, 2001.  The next day he requested to be seen by a doctor.  He was not seen by a doctor until May 2, 2001.  It is unclear from the complaint when surgery was recommended, but it was performed on September 12, 2002.

According to the Defendants, Gonzalez was treated for pain in his right foot and left heel on March 26, 2001.  He was seen again for his foot problem on April 20, 2001.  On May 2, 2001 an orthopedist examined his right foot and left heel and diagnosed him with questionable metatarsalgia and possible Kohler's disease.  He was also told that a bone scan x-ray would be performed if there was no improvement.  Defendants maintain that Plaintiff did not raise any complaint regarding his left knee until June 22, 2001.

In his opposing brief, Gonzalez acknowledges that the first time he complained about his left knee was "indeed on June 15,

2001 or sometime after the original fall." Doc. 44, p. 5.

As previously noted, this action is deemed filed as of March 22, 2004. Clearly there are material facts in dispute as to when the Plaintiff's claim accrued. However, it is apparent to this Court that the Plaintiff's allegations assert that there was a continuing pattern of deliberate indifference. Thus, under the standards set forth in <u>Brenner</u>, the Court will not grant summary judgment on the basis of Defendants' statute of limitations argument.

**Personal Involvement**

The summary judgment motion next argues that there are no assertions that Defendants Nash, Sweet, Thompson, Mauer, Iwuagwu, Hubble, Steffan, Smith, Ong or Hendershot had personal involvement in any acts of constitutional misconduct.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims cannot be premised on a theory of <u>respondeat superior</u>. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via

10

the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Plaintiff's original complaint indicates that PA Hubble provided the initial treatment following his alleged April 7, 2001 injury.  It is also indicated that Hubble underestimated the extent of Gonzalez's injury.  The original complaint also indicates that Defendants Thompson and Maurer were responsible for the maintenance of the running track.  Plaintiff's supplemental complaint clearly identifies Defendants Ong and Hendershot as members of the prison's Medical Department and asserts that those two defendants committed deliberate indifference through their failure to implement a course of treatment recommended by Doctor Borofsky on April 23, 2003. This Court is satisfied that the above assertions sufficiently allege personal involvement in constitutional misconduct by Doctor Hendershot, Health Care Administrator Ong, PA Hubble, and Thompson and Maurer.

11

However, a review of both the original and supplemental complaints establishes that there are no factual assertions that Defendants Nash, Sweet, Iwuagwu, Steffan and Smith had any personal involvement or acquiescence in the alleged violations of Plaintiff's constitutional rights.  It appears that Gonzalez is attempting to establish liability against those officials solely on the basis of the supervisory positions which they occupy within the prison.  However, such assertions are insufficient for establishing liability under <u>Bivens</u>.

Other than the fact that those five (5) officials are named as Defendants, there are no assertions whatsoever regarding them made by the Plaintiff.  Consequently under the standards announced in <u>Rode</u>, Defendants Nash, Sweet, Iwuagwu, Steffan and Smith are entitled to entry of summary judgment.

**Administrative Exhaustion**

Defendants assert that Plaintiff failed to exhaust his available administrative remedies with respect to his claims regarding interference by Defendant Kranzel with his attempts to obtain administrative relief and his contention of an unsafe running track at FCI-Schuylkill.  Furthermore, based on the non-exhaustion of those claims, Gonzalez's entire action should be dismissed under the total exhaustion rule.

42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to

12

> prison conditions under Section 1979 of the
> Revised Statutes of the United States (42
> U.S.C. 1983), or any other federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as are available are
> exhausted.

Section 1997e(a) requires administrative exhaustion

"irrespective of the forms of relief sought and offered through

administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992

(2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims

for monetary relief are not excused from the exhaustion

requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000).

Dismissal of an inmate's claim is appropriate when a prisoner

has failed to exhaust his available administrative remedies

before bringing a civil rights action. Ahmed v. Sromovski, 103

F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur

prior to filing suit, not while the suit is pending." Tribe v.

Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing

Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

An inmate's failure to comply with the administrative

exhaustion requirement constitutes an affirmative defense. See

e.g., Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000), cert.

denied, 532 U.S. 1065 (2001); Jenkins v. Haubert, 179 F.3d 19,

29 (2d Cir. 1999); Robinson v. Dalton, 107 F.3d 1018, 1021 (3d

Cir. 1997)(failure to exhaust administrative remedies is an

affirmative defense in a Title VII case). Consequently, a

prisoner does not have to allege in his complaint that he has

exhausted administrative remedies.  <u>Ray v. Kertes</u>, 285 F.3d 287

(3d Cir. 2002).  Rather, it is the burden of a defendant

asserting the defense to plead and prove it.  <u>Id</u>.; <u>Williams v.

Runyon</u>,130 F.3d  568, 573 (3d Cir. 1997); <u>Charpentier v. Godsil</u>,

937 F.2d 859 (3d Cir. 1991); Fed. R. Civ. P. 8(c).

     The BOP has established a multi-tier Administrative Remedy

Program whereby a federal prisoner may seek review of any aspect

of his imprisonment.[1]  <u>See</u> 28 C.F.R. §§ 542.10-542.19 (1998).

"This program applies to all inmates confined in institutions

operated by the Bureau of Prisons, to inmates designated to

Community Corrections Centers (CCCs) under Bureau of Prisons'

responsibility, and to former inmates for issues that arose

during their confinement but does not apply to inmates confined

---

     1. Matters excluded from this program are set forth at 28
C.F.R. § 542.12, which states as follows:

          (a) An inmate may not use this Program to
          submit a Request or Appeal on behalf of another
          inmate.  This program is intended to address
          concerns that are personal to the inmate making
          the Request or Appeal, but shall not prevent an
          inmate from obtaining assistance in preparing a
          Request or Appeal, as provided in § 542.16 of
          this part.
          (b) Requests or Appeals will not be accepted
          under the Administrative Remedy Program for
          claims for which other administrative
          procedures have been established, including
          tort claims, Inmate Accident Compensation
          claims, and Freedom of Information or Privacy
          Act requests.  Staff shall inform the inmate in
          writing of the appropriate procedure if the
          Request or Appeal is not acceptable under the
          Administrative Remedy Program.

14

in other non-federal facilities." Id. at § 542.10.

The program provides that, with certain exceptions, "... an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request For Administrative Remedy."[2] Id. at § 542.13(a). Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20 "calendar days following the date on which the basis for the Request occurred." Id. at § 542.14(a). If a valid reason for delay is given, an extension of the filing time may be granted. Id. at 542.14(b). The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond. Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response. Id. at § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to

_____

2. CCC inmates are not required to seek informal resolution. Id. at § 542.13(b). Informal resolution is not required for those matters identified in § 542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled housing status appeals. Id. Additionally, informal resolution may be waived in individual cases at the discretion of either the Warden or the institution Administrative Remedy Coordinator "when the inmate demonstrates an acceptable reason for bypassing informal resolution." Id.

15

the General Counsel within 30 calendar days from the date the
Regional Director signed the response.  Id.  "When the inmate
demonstrates a valid reason for delay, these time limits may be
extended."  Id.  The Regional Director has 30 calendar days to
respond and the General Counsel has 40 calendar days in which to
respond.  Id. at § 542.18.

The response time provided for at each level may be
extended in writing "once by 20 days at the institution level,
30 days at the regional level, or 20 days at the Central Office
level."  Id.  Additionally, "[i]f the inmate does not receive a
response within the time allotted for reply, including
extension, the inmate may consider the absence of a response to
be a denial at that level."  Id.

It is undisputed that Plaintiff fully exhausted his
administrative appeals regarding his medical treatment related
claims.  See Doc. 45, p. 19.  However, Defendants assert that
Plaintiff's claims relating to an unsafe running track at FCI-
Schuylkill and alleged retaliatory and discriminatory
interference by Defendant Kranzel were not exhausted.

In support of their argument, Defendants have submitted an
undisputed declaration under penalty of perjury by FCI-Allenwood
Attorney-Advisor John Wallace.  See Doc. 42, Exhibit 3.  Wallace
states that in the three years or so prior to February, 2005,
Plaintiff filed sixteen (16) administrative grievances regarding
his medical treatment and the calculation of his good time

16

credits.   None of those grievances concerned the condition of
the running track or the purported interference by Defendant
Kranzel.

As previously noted, Plaintiff's jogging related injury
occurred on April 7, 2001.  According to exhibits submitted by
Plaintiff, the alleged interference by Kranzel occurred in
August-September, 2003.  Despite Plaintiff's argument that
Defendant Kranzel interfered with his ability to obtain
administrative relief, the undisputed record establishes that
Gonzalez initiated numerous administrative grievances during the
same periods of time that he was allegedly injured on the
running track and subjected to interference by Kranzel.
Specifically, during the months following Plaintiff's April,
2001 jogging accident, he filed grievances concerning his
medical care in August, October and November, 2001.  Two other
medically related grievances were submitted in 2002, and six (6)
similar grievances were filed in 2003.  Plaintiff filed five
grievances in 2004.  Ten (10) of the above listed grievances
were filed during or following the period of time in which
Kranzel allegedly denied the Plaintiff access to the
administrative remedy procedure.

Consequently, the undisputed record clearly establishes
that Plaintiff failed to exhaust his available administrative
remedies with respect to his unsafe running track and
interference by Kranzel assertions.  Since Gonzalez has also not

17

set a valid reason as to why he should be excused from the
exhaustion requirement, entry of summary judgment on the basis
of non-exhaustion with respect to said claims is appropriate.
However, the Defendants' accompanying request that the non-
exhaustion of administrative remedies with respect to those
allegations also warrants dismissal of Gonzalez's unrelated
medical claims is denied.

**Deliberate Indifference**

The moving Defendants next argue that summary judgment is
appropriate because the undisputed facts establish that there
was no deliberate indifference to any serious medical need of
the Plaintiff.  Rather, they contend that this is simply a case
where a prisoner is disagreeing with the type of medication
which he is being prescribed.

According to the Defendants, prior to his FCI-Schuylkill
confinement, Plaintiff sought medical attention on March 16,
2000 for a running related injury to his left knee. He arrived
at FCI-Schuylkill on February 15, 2001.  On March 26, 2001,
Gonzalez complained of pain in his right foot and left heel.  He
was placed on anti-inflammatory medication and referred to an
orthopedist.  Defendants contend that there are no medical
records indicating that Plaintiff injured his left knee in a
running accident on April 7, 2001.

On May 2, 2001, Plaintiff was seen by an orthopedist who
diagnosed with questionable metarsalgia and possible Kohler's

disease.  A bone scan x-ray was recommended if there was no improvement.  He underwent follow-up treatment for additional complaints of right foot pain.  On June 22, 2001, Gonzalez allegedly for the first time at FCI-Schuylkill, complained of left knee pain and was treated for swelling behind his left knee.  He was diagnosed as suffering from a baker's cyst of the knee.  An EKG and x-ray were ordered.  Four (4) days later the x-ray was taken and the EKG was performed the next day.

Plaintiff was evaluated by an orthopedic surgeon on August 3, 2001.  This evaluation ruled out a torn meniscus and recommended an MRI.  On September 14, 2001, an MRI was ordered for Plaintiff's left knee.  The MRI was performed on November 19, 2001.

On December 7, 2001, a physician referred Plaintiff to an orthopedic specialist after noting MCL tender, MRI PLL partial tear, MCL eclusion and degenerated meniposis.  Arthroscopic surgery was recommended on March 22, 2002.  Plaintiff was given a knee brace to restrict knee movement on April 18, 2002.  He was diagnosed with a deranged knee and a lumbo-sacral sprain on April 30, 2002.  Gonzalez was diagnosed with arthritis of the knee and prescribed medication on May 12, 2002.  He was next diagnosed with a probable tear of median meniscus and posterior cruciate ligament on June 3, 2002.  Three (3) days later he was examined by an orthopedic surgeon.  He underwent arthroscopic surgery on September 12, 2002.  The diagnosis following surgery

19

was arthritis with no mechanical problem.  Gonzalez was thereafter treated on various dates for complaints of left knee pain.

He was referred to a rheumatologist on November 19, 2002. Plaintiff was given a steroid injection on Aril 18, 2003.  On April 23, 2003, Plaintiff had a  rheumatology consultation.  He was diagnosed with monoarthitis and physical therapy was recommended.  Doctor Hendershot informed the Plaintiff on April 24, 2003 that there was no need for formal physical therapy, however, he was referred for a physical therapy evaluation.  A knee strap was prescribed on March 9, 2004.  Beginning on August 16, 2004 (after the initiation of this action), Plaintiff began complaining of pain in his right knee.

Pursuant to the Supreme Court's decision in <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), an inmate plaintiff must demonstrate that prison officials have breached the standard of medical treatment to which he was entitled.  The government has an "obligation to provide medical care for those whom it is punishing by incarceration."  <u>Id</u>. at 103.

However, a constitutional violation does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain."  <u>Id</u>. at 104 (citation omitted).  The Court of Appeals for the Third Circuit has held that not every injury or illness enjoys constitutional protection; only serious medical needs are

20

actionable.  <u>Colburn v. Upper Darby Township</u>, 946 F.2d 1017,
1023 (3d Cir. 1991); <u>West v. Keve</u>, 571 F.2d 158, 161 (3d Cir.
1978).  Furthermore, a complaint that a physician or a medical
department "has been negligent in diagnosing or treating a
medical condition does not state a valid claim of medical
mistreatment under the Eighth Amendment [as] medical malpractice
does not become a constitutional violation merely because the
victim is a prisoner."  <u>Estelle</u>, 429 U.S. at 106.

A later decision by the Supreme Court addressed the issue
of what standard should be applied in determining deliberate
indifference in Eighth Amendment cases.  The Court established
that the proper analysis is whether a prison official "acted or
failed to act despite his knowledge of a substantial risk of
serious harm."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994).
The Court of Appeals for the Third Circuit in <u>Durmer v.
O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993), added that a non-
physician defendant cannot be considered deliberately
indifferent for failing to respond to an inmate's medical
complaints when he is already receiving treatment by the
prison's medical staff.  However, where a failure or delay in
providing prescribed treatment is deliberate and motivated by
non-medical factors, a constitutional claim may be presented.
<u>See</u> <u>id</u>.

Under <u>Farmer</u>, deliberate indifference is a subjective
standard in that the prison official must actually have known or

21

been aware of the excessive risk to inmate safety.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  In Beers-Capitol it was also recognized that a defendant's knowledge of a risk can be proved indirectly by circumstantial evidence.

Based on the record to date, there are clearly material facts in dispute as to whether delays in implementing recommended medical testing and treatment constituted deliberate indifference by the remaining Defendants.

According to the record, arthroscopic surgery was recommended on March 22, 2002, but not performed until September 12, 2002.  The diagnosis following that surgery concluded that there was no mechanical problem with Plaintiff's left knee but that he was suffering from arthritis.  The diagnosis recommended that the prisoner be provided with physical therapy.  Additional medical care was subsequently provided and there is evidence that Gonzalez missed two follow-up appointments with the orthopedic surgeon.  Plaintiff made a complaint of not being provided with physical therapy during November, 2002.  On December 25, 2002, Gonzalez fell and again injured his left knee.

On April 24, 2003, Doctor Hendershot determined that there

was no need for formal physical therapy.  A subsequent physical therapy evaluation also did not recommend physical therapy.  The record indicates that the physical therapy recommendation made following Gonzalez's surgery was not followed.  However, there was a difference in opinion by trained medical personnel as to whether physical therapy was needed.  There has also been no showing by the Plaintiff that the lack of physical therapy has caused him any actual injury.

Based on this Court's review of the undisputed record, the Plaintiff's allegations sound in negligence.  He was clearly provided with regular medical care including arthroscopic surgery, MRI testing, x-ray and EKG testing, as well as consultations with both an orthopedic surgeon and a rheumatologist.  He also underwent a physical therapy evaluation.  The failure of Gonzalez to be provided with physical therapy due to a disagreement between physicians is a question of negligent medical care and does not set forth a viable claim of deliberate indifference under the standards announced in Estelle.  Defendants are also entitled to entry of summary judgment with respect to the Plaintiff's remaining claim.

**Qualified Immunity**

Defendants also claim entitlement to qualified immunity. Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Id.; Verney v. Pennsylvania

Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).   In

Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States

Supreme Court held "that government officials performing

discretionary functions generally are shielded from liability

for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which

a reasonable person would have known."   Id. at 818; Sherwood v.

Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v.

Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).   It has also

been held that "qualified immunity is coextensive for suits

brought against state officials under 42 U.S.C. § 1983 (1982),

and for suits brought directly under the Constitution against

federal officials."   People of Three Mile Island v. Nuclear

Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984)

(citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533

U.S. 194 (2001), established a two part test for analyzing

qualified immunity claims.   See also Curley v. Klem, 298 F.3d

271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir.

2002).   The initial inquiry in a qualified immunity examination

is whether "the facts taken in the light most favorable to the

plaintiff show a constitutional violation."   Bennett, 274 F.3d

at 136.

Based on the conclusions set forth earlier herein, this

Court has concluded that Plaintiff's allegations do not set

forth a viable <u>Bivens</u> claim.  Consequently, the first prong of <u>Saucier</u> has not been satisfied.  Further discussion of the Defendants' qualified immunity argument is not required.  An appropriate Order will enter.

AND NOW, THIS 22nd DAY OF SEPTEMBER, 2005, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1.   Defendants' motion for summary judgment (Doc. 35) is granted.

2.   The claims against the Defendants in their official capacities are barred by the Eleventh Amendment.

3.   FCI-Schuylkill is not a properly named defendant and therefore entitled to entry of summary judgment.

4.   Since there are no allegations of personal involvement set forth against them, Defendants Nash, Sweet, Iwuagu, Steffan and Smith are entitled to entry of summary judgment.

5.   Plaintiff's claims that Defendant Kranzel denied him access to the administrative remedy procedure and that Defendants Thompson and Maurer failed to maintain the prison's running track are dismissed for failure to exhaust administrative remedies.

25

6.   Summary judgment is also granted in favor of the
     remaining Defendants with respect to Plaintiff's
     remaining claims of deliberate indifference to
     his medical needs.

7.   The Clerk of Court is directed to close the case.

8.   Disposition of this action does not preclude
     Plaintiff from pursuing a tort action regarding
     his claim of negligent medical care, if he so
     chooses.


          S/Richard P. Conaboy
     RICHARD P. CONABOY
          United States District Judge